UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

**Andre Winston,**

        **Plaintiff,**

        vs.                                    04-1079

**Brandy CMT, et al.,**

        **Defendants**

### ORDER

      Before the court are the Defendants, Doug Brown's (sued as Brown) and Christopher Brady's (sued as Brandy) summary judgment motion, d/e 88, and the plaintiff's response thereto.

### Background

      The Plaintiff filed his Amended Complaint against Brady and Brown, as well as other defendants, pursuant to 42 U.S.C. §1983. *See* Amended Complaint, at page 1. With respect to Brady and Brown, the Plaintiff alleges deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution. *See* Id. at ¶¶18 and 20. Specifically, the plaintiff claims that Brady deprived him of *free* medical treatment by telling him he had to pay for a refill for a prescription and that Brady purposely interfered with the plaintiff's ability to receive medical treatment because Brady gave the plaintiff's P96 to the hospital administrator. the plaintiff the Plaintiff alleges that his request for medication to treat his pain from arthritis was delayed for several days. *See* Id.

### Standard

      Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied,* 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992).

      However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex,* 477 U.S. at 322.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).  A "metaphysical doubt" will not suffice.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Disputed facts are material only if they might affect the outcome of the suit.  *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Undisputed Material Facts

1. Doug Brown is employed as a medical technician or CMT at Pontiac Correctional Center ("Pontiac"). Amended Complaint, ¶6; Defendants Brady and Brown's Answer and Affirmative Defenses to the Plaintiff's Complaint (herein "Answer"), ¶6.
2. Christopher Brandy was also employed as a medical technician or CMT at Pontiac. Amended Complaint, ¶5; Answer, ¶5.
3. Dr. Funk is the medical director at Pontiac. Amended Complaint, ¶4; Answer, ¶4.
4. The Plaintiff, Andre Winston, No. N-73132, is an inmate at Pontiac.  Amended Complaint, ¶3; Answer, ¶3.
5. The Plaintiff has arthritis. Amended Complaint, ¶12; Answer, ¶8.
6. The Plaintiff had arthritis prior to his arrival at Pontiac. Transcript of the Deposition of Andre Winston ("Tr.") which is attached hereto as Exhibit 1, at 28, lines 22-24.
7. Prior to the Plaintiff coming to Pontiac, when the Plaintiff was at Hill Correctional Center in Galesburg, Illinois ("Galesburg"), his arthritis was treated with Motrin.  Tr. at 31, lines 2-4.
8. The Plaintiff arrived at Pontiac on October 16, 2002. Tr. at 6, Lines 10-13.
9. The Plaintiff does not have any problems with exercise, and he tries to work out every day.  Tr. at 13, lines 16-19.
10. When he first came to Pontiac, the Plaintiff was seen by a nurse and he told her about his arthritis. Tr. at 93-94.
11. The Plaintiff was told that he would be given medication, if he paid for it. Tr. at 95.
12. At times the Plaintiff would go as long as a month without any medication for his arthritis.  Tr. at 95.
13. When he first came to Pontiac, the Plaintiff went for two months without any medication for his arthritis. Tr. at 96, lines 2-4.
14. The Plaintiff did so, not because the medical staff would not provide him with the medication, but because he did not want to pay for it.  Tr. at 96, lines 5-7.
15. The Plaintiff saw a doctor on May 20, 2003.  Tr. at 102, lines 13-17.
17. The Plaintiff does not know if that was Defendant Funk. Tr. at 48, lines 18-19; 66, lines 19-22.
18. The Plaintiff gets Defendant Funk confused with another doctor.  Tr. at 43, lines 20-22.
19. On May 20, 2003, when the Plaintiff was seen by the doctor, he was only given enough pain medication for 21 days. Tr. at 117, lines. 14-16.
20. The Plaintiff took the pain medication three times a day.  Tr. at 120, lines 23-24.
21. On May 20, 2003, when the Plaintiff was seen by the doctor, he knew that he had not

1:04-cv-01079-HAB-JAG   # 138   Page 3 of 6

been given enough pain medication to last him. Tr. at 122, line 16, to 123, line 1.
22. Although the Plaintiff asked the doctor for more pain medication, he was *not* told that he would receive a refill. Tr. at 119, line 24, to 120, line 6; Tr. at 123, lines 2-4.
23. Instead, the doctor told the Plaintiff "we're going to take it one step at a time or some stuff like that." Tr. at 105, lines 14-24.
24. On May 20, 2003, the doctor gave the Plaintiff a certain amount of Motrin, but did not give the Plaintiff a prescription for additional Motrin after that time. Tr. at 106, lines 1-5.
25. CMTs can provide medication for minor problems or refill prescriptions, if the inmate is entitled to a refill. Tr. at 20, lines 19-21.
26. Nevertheless, a doctor is the one who determines whether to order medication. Tr. at 20, lines 1-3.
27. If the prescription card in an inmates' medical file says "no refills," a CMT cannot give the inmate more of the medicine without a doctor's prescription. Tr. at 106, lines 1-23.
28. Instead, the inmate has to request to see the doctor again. Tr. at 106, lines 22-23.
29. The Plaintiff did not have a refill. Tr. at 126, lines 1-7; 54, lines 20-24.
30. The Plaintiff was also told that he was not entitled to a refill. Tr. at 20, lines 14-21.
31. A CMT cannot give the Plaintiff more Motrin himself, without the doctor's authorization. Tr. at 106, line 24, to 107, line 5.
32. A CMT cannot give the Plaintiff a stronger medication either, without a doctor's authorization. Tr. at 107, lines 3-5.
33. By June 29, 2003, the Plaintiff had run out of pain medication. Tr. at 54, line 12.
34. June 29, 2003, is the day that the Plaintiff filled out a request for payment ("p96" form) and gave it to CMT Brady. Tr. at 82, lines 8-11; Tr. at 22, lines 23-24.
35. On the form, the Plaintiff requested something stronger than the Motrin he had received from the doctor on May 20, 2003. Request for Payment form, dated June 29, 2003, attached to the Amended Complaint as Exhibit A; Tr. at 106, lines 1-5.
36. The Plaintiff was not really asking for a refill, he was asking for something different than what he had previously been prescribed. Tr. at 56, ln 1-4.
37. Specifically, the Plaintiff's request for payment form authorized the Illinois Department of Corrections ("DOC") to take two dollars from the Plaintiff's account as his co-payment for the following requested services: (1) an antibiotic shot for an infection in the Plaintiff's throat, (2) to see the eye doctor and obtain eye drops, and (3) to obtain a stronger pain medication for his arthritis than he had received the last time. *See* Request for Payment form, dated June 29, 2003, attached to the Amended Complaint as Exhibit A.
38. The Plaintiff did not request to go to sick call. Tr. at 127, lines 10-14.
39. On June 29, 2003, Defendant Brady took the Plaintiff's p 96 form. *See* Amended Complaint, ¶13; Answer, ¶9.
40. When a copy of the request for payment was returned to the Plaintiff, he noted that his requests had been marked out, and that Brady had written "protocol" on it, instead. Tr. at 88-89; Answer, ¶9.
41. The word "protocol" meant that the Plaintiff's issues would be addressed. Tr. at 90, lines 6-9.
42. Although in his Amended Complaint, the Plaintiff contends that the request for payment or "p96" form was given to the wrong person, the Plaintiff now admits that Brady did submit it. Amended Complaint, ¶13; see also, Tr. at 80 -81.

43. The Plaintiff also admits that he did not request to go to sick call. Tr. at 127, lines 10-14.
44. Brady provided the Plaintiff with Tylenol the next day, on June 30, 2003, after reviewing the Plaintiff's file and determining that the Plaintiff had not been prescribed a refill for Motrin. See Defendants Brady and Brown's Response to the Plaintiff's Interrogatories, Exhibit 2, at page 4-5.
45. On the p96, the Plaintiff had also requested to see an eye doctor. Tr. at 82, lines 3-4.
46. On July 15, 2003, the Plaintiff was seen by the eye doctor. Tr. at 82, lines 5-7.
47. The Plaintiff further admits that Brady may have been assigned to work in another area of the prison. Tr. at 87, lines 22-24.
48. Between July 5, 2003, and July 16, 2003, the Plaintiff talked to Brown approximately four times. Tr. at 101.
49. The Plaintiff complained to Brown about the portion of his p96 having been marked out. Tr. at 92.
50. Brown told the Plaintiff that he had nothing to do with the marked up p96, and that the Plaintiff should talk to the person who took the p96. *See* Defendants Brady and Brown's Response to the Plaintiff's Interrogatories, Exhibit 2, at page 2.
51. Although he spoke with Brown between July 5, 2003, and July 16, 2003, the Plaintiff did not inform Brown that he was in pain or about any other medical condition that he had; instead, he only complained about his paperwork. Defendants Brady and Brown's Response to the Plaintiff's Interrogatories, Exhibit 2, at page 3.
52. Brown could not give the Plaintiff the requested pain medication without a doctor's authorization. Tr. at 110, lines 6-8.
53. Brown is not an eye doctor, and he could not treat the Plaintiff's eyes himself. Tr. at 110, lines 9-12.
54. Brown could not give the Plaintiff an antibiotic shot for an infection either because CMTs have to go through the doctor. Tr. at 110, lines 13-15.
55. The Plaintiff also did not ask Brown to have the Plaintiff sent to sick call. Tr. at 92, lines 22-24.
56. On July 16, 2003, the Plaintiff's pain medication was ordered by Dr. Funk. Tr. at 61, lines 11-14.
57. It normally takes about two days to receive medication after it is ordered. Tr. at 59, lines 21-24.
58. On approximately July 18, 2003, the Plaintiff received the additional Motrin ordered by Dr. Funk. Tr. at 62, lines 9-11.

## Discussion

The courts have long recognized that a prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment to the United States Constitution. *Forbes v. Edgar, et al.*, 112 F.3d 262, 266 (7 Cir. 1997). To prevail on a "deliberate indifference" claim, the plaintiff must show that (1) an objectively serious injury or medical need was deprived, and (2) the defendant knew that the risk of injury was substantial, but, nonetheless, failed to take reasonable measures to prevent it from occurring. *Chapman v. Keltner*, 241 F.3d 842, 845 (7 Cir. 2001) (summary judgment was proper, because the court could not conclude, based on the record, that officers deliberately disregarded the doctors prescribed treatment); *see also, Matos v. O'Sullivan, et al.*, 335 F.3d 553, 556 (7th Cir. 2003)

(summary judgment proper where plaintiff did not establish that any defendant intentionally disregarded a known risk to inmate's health and safety).

Under the second part of the test for finding an Eighth Amendment violation, the plaintiff must show that the defendant was "aware of the risk and consciously disregarded it nonetheless." *Chapman* at 845. For example, "[d]eliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." Chapman at 845-846. Nevertheless, "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). In other words, medical malpractice does not become a constitutional violation merely because the victim is an inmate, and a complaint that a physician has been negligent in diagnosing or treating a medical condition of an inmate does not state a valid claim under the Eighth Amendment. *Estelle v. Gamble, 429 U.S. 97,* 106 (1976). As a result, courts must distinguish between (1) deliberate indifference to the serious medical needs of an inmate, and (2) negligence in the diagnosis or treatment of the inmate's medical condition. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). "Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Moreover, public officials may quite reasonably choose not to question a licensed physician's determinations regarding the proper treatment for persons who are in their custody. *Allen v. Rockford*, 349 F.3d 1015, 1020 (7th Cir. 2003) (summary judgment proper where police allowed licensed physician to exercise his judgment, and did not interfere, with respect to proper treatment of woman in their custody). *See also*, *Brownell v. Figel, et al.*, 950 F.2d 1285, 1291 (7th Cir. 1991) ("it would be unrealistic to expect a layman -- in all but extreme cases - to question whether a doctor had employed proper procedures in examining an accident victim").

The Plaintiff claims that Defendant Brady was deliberately indifferent to the Plaintiff's serious medical needs in that Brady allegedly (1) submitted the p96 improperly (2) sent the p96 back to the Plaintiff with marked out information, and (3) did not return to the Plaintiff's cell until July 18, 2003. Tr. at 76; Amended Complaint, ¶18. The Plaintiff has no other issues with Defendant Brady. Tr. at 76. The Plaintiff claims that Defendant Brown was deliberately indifferent to the Plaintiff's serious medical needs because, when the Plaintiff told Brown about the p96, Brown informed the Plaintiff that he had nothing to do with it and referred the Plaintiff to Brady. Amended Complaint, ¶20. Defendant Brady and Brown are entitled to summary judgment, with respect to the Plaintiff's claims. Neither Brady nor Brown could give the Plaintiff more Motrin, or a stronger medication, without either doctor's prescription or a prescription refill. The Plaintiff has no evidence that he had either. Thus, Defendants Brady and Brown did not deliberately disregarded a doctor's prescribed treatment. Similarly, there is no evidence that Defendants Brady or Brown deprived the Plaintiff of an objectively serious medical need. While at Pontiac, the Plaintiff had previously gone as long as two months without pain medication – not because he could not receive it – but because he believed he was entitled to free medication and did not want pay for it. The Plaintiff knew that he would run out of pain medication when he was at the doctor's office on May 20, 2003. Nevertheless, he waited until he ran out of pain medication, before giving the p96 to Defendant Brady. Moreover, even after running out of pain medication, the Plaintiff never requested that Defendants Brady or Brown send him to sick call to have his arthritis treated by a physician. The Plaintiff now admits that

Brady did submit the p96.  The Plaintiff testified at deposition that it was his understanding that "protocol" meant that his medical issue would be addressed.  Furthermore, Brady gave the Plaintiff Tylenol, after reviewing the charts and discovering that the Plaintiff had not been prescribed more Motrin.  The Plaintiff did not tell Brown that he was in pain. The Plaintiff admits that, on July 15, 2003, he was treated by an eye doctor, as requested in the p96. Dr. Funk ordered the Plaintiff more Motrin on July 16, 2003, and it was provided to him within the customary two days, after it had been ordered.  Furthermore, *see Reynolds v. Wagner*, 128 F.3d 166, 174 (3rd Cir.1997) (prisoner co-payment plan does not violate the Eighth Amendment); *Shapley v. Nevada Bd. of State Prison Commissioners*, 766 F.2d 404, 408 (9th Cir.1985) (nothing per se unconstitutional about charging an inmate $3 for every medical visit; such a charge, by itself, did not constitute deliberate indifference under Estelle); *See also Hudgins v. DeBruyn*, 922 F.Supp. 144, 150-52 (S.D.Ind.1996) (same); *Martin v. DeBruyn*, 880 F.Supp. 610, 615 (N.D.Ind.1995), aff'd, 116 F.3d 1482 (7 th Cir.1997) (Eighth Amendment guarantees only that inmates receive necessary medical care; it does not guarantee free medical care).  There are no genuine issue of material fact, and Brady and Brown are granted summary judgment as a matter of law.

It is therefore ordered:

1. **Pursuant to Fed. R. Civ. P. Rule 56(c), the Defendants, Brady and Brown's summary judgment motion, d/e 88, is allowed.  The clerk of the court is directed to enter judgment in favor of the Defendants, Brady and Brown and against the plaintiff at the conclusion of this lawsuit.**
2. **As a result of the foregoing, the Plaintiff's summary judgment motion as to Defendants Brady and Brown, d/e 99, is denied as moot.**
3. **If the plaintiff wishes to appeal this ruling, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  See Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $255.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**Enter this 20th  day of March 2006.**

s\Harold A. Baker
_____
**HAROLD A. BAKER**
**UNITED STATES DISTRICT JUDGE**