UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

**Andre Winston,**

      **Plaintiff,**

      vs.          04-1079

**Brandy CMT, et al.,**

      **Defendants**

### ORDER

      Before the court are the Defendant, Gary Seep's (sued as Gary) summary judgment motion, d/e 117, and the plaintiff's response.

### Standard

      Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied,* 470 U.S. 1028 (1985).  In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party.  *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992).

      However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial."  *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).  A "metaphysical doubt" will not suffice.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Disputed facts are material only if they might affect the outcome of the suit.  *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

1:04-cv-01079-HAB-JAG   # 139    Page 2 of 6

## Background

The Plaintiff seeks money damages for deliberate indifference against Defendant, Gary Seep. The Plaintiff claims that Defendant Seep is an employee at the hospital administrative department and is responsible for issues regarding the P96 form; that Defendant Seep was informed of Inmate Winston's medical issues when CMT Brandy gave Defendant Winston's P96 form for Defendant Seep' signature; that Defendant Seep was deliberately indifferent and purposely interfered with Inmate Winston's ability to receive medical treatment; that Defendant Seep, as hospital administrator, interfered with his medical treatment; that Defendant, Gary Seep, knew of Inmate Winston's medical needs, was aware of the substantial risk Inmate Winston would suffer if Defendant Seep signed his name to something he was not authorized to sign; that Defendant Seep knew of Inmate Winston's medical problem but did not report it to the proper person or advise anyone of Inmate Winston's needs; and that Defendant Seep failed to have the proper person sign the P96 form. (Plaintiff's Amended Complaint, paragraphs 8, 16, 18, and 19).
Plaintiff claims that as a result of Defendant Seep's alleged deliberate indifference, he was denied medical treatment, which ultimately affected his "pelletier" and caused an alteration of his
brain wave activity and "endocrince", thereby causing him to flood his gallery. Defendant Seep denies that Plaintiff was treated with deliberate indifference and that he was treated inappropriately in any way. Defendant further denies that Plaintiff was injured or received any physical injuries as a result of the allegations made against Defendant Seep.

## Undisputed Facts

1. Plaintiff Winston is currently an inmate at Pontiac Correctional Center. (Deposition of Andre Winston, page 6, lines 10-13). A true and accurate copy of Plaintiff's deposition transcript is attached as Exhibit "1").
2. Defendant Seep works in the Health Care Unit as an Office Coordinator and is, therefore, familiar with the P96 forms. (Plaintiff's Amended Complaint, paragraph 8 and Defendant Seep's Affidavit, attached as Exhibit "2").
3. Mr. Winston has been incarcerated at the Illinois Department of Corrections since 1987 (Deposition of Andre Winston, page 7, line 9).
4. To receive non-emergency medical or dental services, the inmate shall authorize the Department to deduct a $2.00 co-pay from prisoner future funds in his or her trust fund account prior to each visit. Non-emergency services are scheduled services determined necessary by a Department. When the medical services are delivered, the co-payment shall be paid from the inmate's trust fund. If the inmate does not have funds available at the time these services are delivered, medical or dental treatment will not be denied. Once the funds become available, they will be applied. (See Gary Seep's Affidavit, paragraph 6; see also Andre Winston's deposition, page 21, lines 20-24; page 22, lines 1-17). Although Mr. Seep is familiar with the $2.00 co-pay requirement, Mr. Seep does not make the final decision as to whether money is deducted from an inmate's trust fund (see Gary Seep's Affidavit, paragraph 7).

5. A P96 (also referred to as an 828 form) is a request for payment of services such as medical treatment. (See Andre Winston's deposition, page 22, line 18-24; page 23, lines 1-4; see also Defendant Seep's Affidavit, paragraph 8.)  Inmate Winston is familiar with the procedures for requesting medical care at Pontiac Correctional Center (see Andre Winston's deposition, page 17, lines 2-8).

6. In order to receive medical treatment, Inmate Winston understood that he had to follow proper protocol.  (See Andre Winston's deposition, page 35, lines 15-17).

7. Defendant Seep never personally examined or treated Inmate Winston for any of his medical needs in that Defendant Seep is not a licensed medical physician, nor does he have any medical training.  (See Gary Seep's Affidavit, paragraphs 19 and 24).

8. On June 29, 2003, Inmate Winston submitted a P96 form for medical treatment.  (See Gary Seep's Affidavit, paragraph 8).

9. Defendant Seep is responsible for verifying the completeness of the P96 form. (See Gary Seep's Affidavit, paragraph 5.) A few other select individuals also have signature authority and are able to validate whether the P96 form is properly completed (see Gary Seep's Affidavit, paragraph 9.)

10. For a P96 form to be considered complete, it must contain the inmate's name, the inmate's number, a legitimate and valid request for medical treatment, the provider's signature from either a Certified Medical Technician or a nurse, along with the date. (See Gary Seep's Affidavit, paragraph 10).

11. On occasion, where an inmate will not follow proper protocol and lists more than one medical request, it is customary for either the CMT or the nurse to cross out the non-compliant section and write the word "protocol". (See Gary Seep's Affidavit, paragraph 21).

12  So long as the inmate's name, inmate number, the word protocol, the provider's signature, and the date appear on a P96 form, then the P96 form will be considered complete and Defendant Seep, or another authorized signer, will place his signature upon said form as validation that it is complete. (See Gary Seep's Affidavit, paragraphs 10, 13 and 14).

13. On its face, Inmate Winston's June 29, 2003 P96 form was considered complete because it contained the inmate's name, the inmate's number, the word "protocol", the provider's signature, and the date.  (See Gary Seep's Affidavit, paragraph 13).

14. After P96 forms are approved or disproved, they are then submitted to the business office for further processing.  (See Gary Seep's Affidavit, paragraph 18).

15. Gary Seep, as Office Coordinator, had signature authority to sign Inmate Winston's June 29, 2003 P96 form. (See Gary Seep's Affidavit, paragraph 5).

16. Defendant Seep followed proper procedures regarding Inmate Winston's P96 form, dated June 29, 2003.  (See Gary Seep's Affidavit, paragraph 20).

17. Gary Seep did not alter Inmate Winston's June 29, 2003 P96 form.  (See Gary Seep's Affidavit, paragraphs 12 and 15).

18. Inmate Winston's June 29, 2003 P96 form was already altered with the word "protocol" written upon it by the time Gary Seep reviewed it and signed it. (See Gary Seep's Affidavit, paragraph 12).

19. Inmate Winston did not receive any physical injury by Mr. Seep's verification that the June 29, 2003 P96 form was complete. (See Gary Seep's Affidavit, paragraph 23).
20. Gary Seep was not aware of Plaintiff's medical needs on June 29, 2003 because his requested medical treatment was crossed out based on Inmate Winston's failure to follow proper protocol. (See Gary Seep's Affidavit, paragraph 16).
21. Gary Seep was not required to notify anyone of the content that had been marked out by another individual. (See Gary Seep's Affidavit, paragraph 17).
22. At no time following the submission of Plaintiff's June 29, 2003 form for validation was Gary Seep aware of Inmate Winston's request for painkillers. (See Gary Seep's Affidavit, paragraph 16).
23. Mr. Winston acknowledges that if he has three separate medical conditions, then he has to pay for each one separately. (See Andre Winston's deposition, page 126, lines 14-17).
24. On Mr. Winston's June 29, 2003 P96 form, he acknowledges that he listed three separate conditions, but only authorized one $2.00 payment. (See Andre Winston's deposition, page 126, lines 18-23).
25. Mr. Winston acknowledges that he did not satisfy all of the requirements of the June 29, 2003 P96 form. (See Andre Winston's deposition, page 126, line 24; page 127, lines 1-2; see also Gary Seep's Affidavit, paragraph 25.)

**Discussion**

In order to prove his cause of action, plaintiff must prove there was "deliberate indifference" to his serious medical needs. At a minimum, this requires actual knowledge of impending harm which is easily preventable, so that a conscious capable refusal to prevent harm can be inferred from the defendant's failure to prevent it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *Duckworth v. Franton*, 780 F.2d 645, 653 (7th Cir. 1985). Deliberate indifference is more than mere negligence and approaches intentional wrongdoing. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970 (1994). In *Farmer*, the court concluded that deliberate indifference was essentially a criminal recklessness standard, that is, ignoring a known risk. *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998). The deliberate indifference standard applies when prison medical personnel make decisions as to what medical care a person requires. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

To prove deliberate indifference, the doctor must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and that he must actually draw the inference. *Higgins v. Correctional Medical Servs.*, 178 F.3d 508, 511 (7th Cir. 1999). A complaint that a physician has negligently diagnosed a medical condition does not state a cause of action for violation of the prisoner's constitutional rights. Estelle v. Gambel, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). Moreover, it is not enough to simply assert that the doctor should have known of the risks. *Higgins*, 178 F.2d at 511.

Furthermore, a disagreement or dissatisfaction with the method treatment does not constitute an Eighth Amendment claim of deliberate indifference. Snipes v. DeTella, 95 F.3d

4

586, 591-92 (7th Cir. 1996). Medical decisions, such as whether one course of treatment is preferable to another, is beyond the purview of the Eighth Amendment. Such matters are questions of tort, not constitutional law. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Constitution is not a medical code that mandates specific medical treatment. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996). A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

The Plaintiff alleges Gary Seep was deliberately indifferent to his medical needs. More specifically, the Plaintiff claims that Gary Seep crossed out Inmate Winston's requested medical treatment on his June 29, 2003 P96 form. Inmate Winston further claims that Gary Seep was not authorized to sign Inmate Winston's June 29, 2003 P96 form and due to his unauthorized signature, Gary Seep failed to notify the proper individuals of Inmate Winston's medical requests. Stated differently, Inmate Winston claims Gary Seep interfered with Inmate Winston's medical treatment. (See Plaintiff's Amended Complaint, paragraphs 8, 13, 16, 18 and 19). The Plaintiff, however, does not allege Defendant Seep actually denied him medical treatment.

Defendant Seep's Affidavit clearly establishes that as Office Coordinator, he was authorized to sign Inmate Winston's June 29, 2003 P96 form to verify its completeness. Furthermore, it is common practice for the provider, either Certified Medical Technicians or nurses, to cross out requested medical treatment if it is not in compliance with Pontiac Correctional Center's protocol. In this case, Inmate Winston's June 29, 2003 P96 form was already altered by the time Gary Seep received it. Although the requested treatment was crossed out and the word "protocol" was written in place of the Plaintiff's requests, Inmate Winston's June 29, 2003 P96 form was still considered complete in that it contained the inmate's name, the inmate's number, the word "protocol", the provider's signature, and the date. Gary Seep verified the P96 form as being complete by signing the form. He then forwarded it to the business for further processing, in compliance with PCC's policy. Gary Seep does not make the final decision as to whether money is deducted from an inmate's trust fund.

Further, per Defendant Seep's attached Affidavit, Defendant Seep is not a licensed medical physician, does not provide medical treatment, and he cannot make referrals for medical treatment. Therefore, the Plaintiff has not presented any facts that establish that Defendant Seep was deliberately indifferent to a serious medical need. Furthermore, Defendant Seep received the Plaintiff's June 29, 2003 P96 form already in its altered form, and therefore, Defendant Seep cannot be held responsible for crossing out the Plaintiff's request for medical treatment, nor can he be held responsible for knowing what the Plaintiff's requests were. Since Defendant Seep was an authorized signer of the Plaintiff's P96 form, since he did not alter the Plaintiff's June 29, 2003 P96 form, and since Defendant Seep followed proper protocol by forwarding the Plaintiff's P96 form to the business office for processing, the Plaintiff has failed to establish that Defendant Seep was deliberately indifferent to his alleged serious medical needs.
Defendant Gary Seep is entitled to summary judgment as a matter of law.

**It is therefore ordered:**

1. **Pursuant to Fed. R. Civ. P. Rule 56(c), Defendant Gary Seep's summary judgment motion, d/e 117, is granted. The clerk of the court is directed to enter judgment in favor of the Defendant, Gary Seep, and against the plaintiff at the conclusion of this lawsuit.**
2. **If the plaintiff wishes to appeal this ruling, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $255.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**Enter this 20th   day of March 2006.**

s\Harold A. Baker
_____
**HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE**