UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANDRE WINSTON,
    Plaintiff,

vs.          04-1079

CHRISTOPHER BRADY, ARTHUR D. FUNK,
DOUG BROWN, and DALLAS BENNY,
    Defendants.

## OPINION

Before the court are the defendants, Shaw and Cation's summary judgment motion [146] and the plaintiff's response thereto [157]. The defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP") and CDIL-LR 7.1.

### Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical

doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

The plaintiff filed his Amended Complaint against Shaw and Cation, as well as other defendants, pursuant to 42 U.S.C. §1983. Amended Complaint, at page 1. With respect to Shaw and Cation, the Plaintiff alleges deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution. Amended Complaint, ¶¶21and 22. Specifically, the Plaintiff alleges that his request for medication to treat his pain from arthritis was denied for several days, that Shaw and Cation were notified of this denial on July 4, 2003, but were deliberately indifferent to his serious medical needs. Amended Complaint, ¶¶21and 22. The Plaintiff further alleges that Shaw violated his rights, under the First Amendment to the United States Constitution, in that the Plaintiff was disciplined, allegedly by Shaw in retaliation for the Plaintiff flooding his cell. Amended Complaint, ¶22.

## UNDISPUTED MATERIAL FACTS

1. Doug Brown is employed as a medical technician or CMT at Pontiac Correctional Center ("Pontiac"). Amended Complaint, ¶6; Defendants Brady and Brown's Answer and Affirmative Defenses to the Plaintiff's Complaint (herein "Answer"), ¶6.
2. Christopher Brady is a medical technician or CMT at Pontiac. Amended Complaint, ¶5; Answer, ¶5.
3. Richard Cation is a medical technician or CMT at Pontiac. Amended Complaint, ¶7; Answer, ¶7.
4. Cletus Shaw is a correctional lieutenant at Pontiac. Amended Complaint, ¶9; Answer, ¶8.
5. Dr. Funk was the medical director at Pontiac. Amended Complaint, ¶4; Answer, ¶4.
6. The Plaintiff, Andre Winston, No. N-73132, is an inmate at Pontiac. Amended Complaint, ¶3; Answer, ¶3.
7. The Plaintiff has arthritis. Amended Complaint, ¶12; Answer, ¶8.
8. The Plaintiff had arthritis prior to his arrival at Pontiac. Transcript of the Deposition of Andre Winston ("Plaintiff's Dep.") which is attached as Exhibit 1 [147], at 28, lns 22-24.
9. Prior to the Plaintiff coming to Pontiac, when the Plaintiff was at Hill Correctional Center in Galesburg, Illinois ("Galesburg"), his arthritis was treated with Motrin. Plaintiff's Dep. at 31, lns 2-4.
10. The Plaintiff arrived at Pontiac on October 16, 2002. Plaintiff's Dep. at 6, lns. 10-13.
11. The Plaintiff does not have any problems with exercise, and he tries to work out every day. Plaintiff's Dep. at 13, lns. 16-19.
12. When he first came to Pontiac, the Plaintiff was seen by a nurse and he told her about his arthritis. Plaintiff's Dep. at 93-94.

13. The Plaintiff was told that he would be given medication, if he paid for it. Plaintiff's Dep. at 95.
14. At times the Plaintiff would go as long as a month without any medication for his arthritis. Plaintiff's Dep. at 95.
15. When he first came to Pontiac, the Plaintiff went for two months without any medication for his arthritis. Plaintiff's Dep. at 96, lns. 2-4.
16. The Plaintiff did so, not because the medical staff would not provide him with the medication, but because he did not want to pay for it. Plaintiff's Dep. at 96, lns. 5-7.
17. At times the Plaintiff went without his medication because he preferred to have money for postage. Plaintiff's Dep. at 50.
18. The Plaintiff saw a doctor on May 20, 2003. Plaintiff's Dep. at 102, lns. 13-17.
19. The Plaintiff does not know if that was Defendant Funk. Plaintiff's Dep. at 48, lns. 18-19; 66, lns. 19-22.
20. The Plaintiff gets Defendant Funk confused with another doctor. Plaintiff's Dep. at 43, lns 20-22.
21. On May 20, 2003, when the Plaintiff was seen by the doctor, he was only given enough pain medication for 21 days. Plaintiff's Dep. at 117, lns. 14-16.
22. The Plaintiff took the pain medication three times a day. Plaintiff's Dep. at 120, lns 23-24.
23. On May 20, 2003, when the Plaintiff was seen by the doctor, he knew that he had not been given enough pain medication to last him. Plaintiff's Dep. at 122, ln. 16, to 123, ln 1.
24. Although the Plaintiff asked the doctor for more pain medication, he was *not* told that he would receive a refill. Plaintiff's Dep. at 119, ln. 24, to 120, ln. 6; Plaintiff's Dep. at 123, lns 2-4.
25. Instead, the doctor told the Plaintiff "we're going to take it one step at a time or some stuff like that." Plaintiff's Dep. at 105, lns 14-24.
26. On May 20, 2003, the doctor gave the Plaintiff a certain amount of Motrin, but did not give the Plaintiff a prescription for additional Motrin after that time. Plaintiff's Dep. at 106, lns 1-5.
27. CMTs can provide medication for minor problems or refill prescriptions, if the inmate is entitled to a refill. Plaintiff's Dep. at 20, lns. 19-21.
28. Nevertheless, a doctor is the one who determines whether to order medication. Plaintiff's Dep. at 20, lns. 1-3.
29. If the prescription card in an inmates' medical file says "no refills," a CMT cannot give the inmate more of the medicine without a doctor's prescription. Plaintiff's Dep. at 106, lns. 1-23.
30. Instead, the inmate has to request to see the doctor again. Plaintiff's Dep. at 106, lns. 22-23.
31. The Plaintiff did not have a refill. Plaintiff's Dep. at 126, lns. 1-7; 54, lns. 20-24.
32. The Plaintiff was also told that he was not entitled to a refill. Plaintiff's Dep. at 20, lns. 14-21.
33. A CMT cannot give the Plaintiff more Motrin himself, without the doctor's authorization. Plaintiff's Dep. at 106, ln. 24, to 107, ln. 5.
34. A CMT cannot give the Plaintiff a stronger medication either, without a doctor's

authorization. Plaintiff's Dep. at 107, lns. 3-5.
35. By June 29, 2003, the Plaintiff had run out of pain medication. Plaintiff's Dep. at 54, ln 12.
36. June 29, 2003, is the day that the Plaintiff filled out a request for payment ("p96") form and gave it to CMT Brady. Plaintiff's Dep. at 82, lns. 8-11; Plaintiff's Dep. at 22, lns. 23-24.
37. On the form, the Plaintiff requested something stronger than the Motrin he had received from the doctor on May 20, 2003. Request for Payment form, dated June 29, 2003, attached to the Amended Complaint as Exhibit A; Plaintiff's Dep. at 106, lns 1-5.
38. The Plaintiff was not really asking for a refill, he was asking for something different than what he had previously been prescribed. Plaintiff's Dep. at 56, ln 1-4.
39. On June 29, 2003, Defendant Brady took the Plaintiff's p 96 form. Amended Complaint, ¶13; Answer, ¶9.
40. When a copy of the request for payment was returned to the Plaintiff, he noted that his requests had been marked out, and that Brady had written "protocol" on it, instead. Plaintiff's Dep. at 88-89; Answer, ¶9.
41. The word "protocol" meant that the Plaintiff's issues would be addressed. Plaintiff's Dep. at 90, lns. 6-9.
42. The Plaintiff admits that he did not request to go to sick call. Plaintiff's Dep. at 127, lns. 10-14.
43. Brady provided the Plaintiff with Tylenol the next day, on June 30, 2003, after reviewing the Plaintiff's file and determining that the Plaintiff had not been prescribed a refill for Motrin. Defendants Brady and Brown's Response to the Plaintiff's Interrogatories, attached hereto as Exhibit 2, at pages 4-5.
44. On the p96, the Plaintiff had also requested to see an eye doctor. Plaintiff's Dep. at 82, lns 3-4.
45. And, on July 15, 2003, the Plaintiff was seen by the eye doctor. Plaintiff's Dep. at 82, lns. 5-7.
46. On July 16, 2003, the Plaintiff flooded his cell. Plaintiff's Dep. at 58, lns. 18-22.
47. The Plaintiff claimed that his brain waves were altered. Plaintiff's Dep. at 58, ln. 23, through 59, line 1.
48. Based upon the Plaintiff's behavior on July 16, 2003, he received two disciplinary tickets. Plaintiff's Dep. at 61, lns. 15-17.
49. The Plaintiff could not receive the requested pain medication without a doctor's authorization. Plaintiff's Dep. at 110, lns 6-8.
50. On July 16, 2003, following a review of the Plaintiff's medical records, Dr. Funk ordered Motrin for the Plaintiff. Plaintiff's Dep. at 61, lns. 11-14, and at 62, lns 9-11; Affidavit of Dr. Funk previously filed in this case as Exhibit 3 to Doc. #87 ("Funk Affidavit"), ¶38 (for ease of reference, a copy of Dr. Funk's Affidavit, without its exhibits, is attached hereto as Exhibit 3)
51. It normally takes about two days to receive medication after it is ordered. Plaintiff's Dep. at 59, lns 21-24.
52. On approximately July 18, 2003, the Plaintiff received the Motrin ordered by Dr. Funk. Plaintiff's Dep. at 62, lns 9-11.
53. In the medical opinion of Dr. Funk, the Plaintiff was given all medications as was

> medically necessary to treat his condition. Funk Affidavit, ¶13.

54. In the medical opinion of Dr. Funk, the Plaintiff was treated appropriately during the time frame he alleged in his Complaint: October 2002 through September 2003. Funk Affidavit, ¶14.

**DELIBERATE INDIFFERENCE**

The courts have long recognized that a prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment to the United States Constitution. *Forbes v. Edgar, et al.*, 112 F.3d 262, 266 (7th Cir. 1997). To prevail on a "deliberate indifference" claim, the plaintiff must show that (1) an objectively serious injury or medical need was deprived, and (2) the defendant knew that the risk of injury was substantial, but, nonetheless, failed to take reasonable measures to prevent it from occurring. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (summary judgment was proper, because the court could not conclude, based on the record, that officers deliberately disregarded the doctors prescribed treatment); *see also, Matos v. O'Sullivan, et al.*, 335 F.3d 553, 556 (7th Cir. 2003) (summary judgment proper where plaintiff did not establish that any defendant intentionally disregarded a known risk to inmate's health and safety). Under the second part of the test for finding an Eighth Amendment violation, the plaintiff must show that the defendant was "aware of the risk and consciously disregarded it nonetheless." *Chapman* at 845. For example, "[d]eliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." Chapman at 845-846. Nevertheless, "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). In other words, medical malpractice does not become a constitutional violation merely because the victim is an inmate, and a complaint that a physician has been negligent in diagnosing or treating a medical condition of an inmate does not state a valid claim under the Eighth Amendment. *Estelle v. Gamble, 429 U.S. 97,* 106 (1976). As a result, courts must distinguish between (1) deliberate indifference to the serious medical needs of an inmate, and (2) negligence in the diagnosis or treatment of the inmate's medical condition. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7 Cir. 1997). "Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

Moreover, public officials may quite reasonably choose not to question a licensed physician's determinations regarding the proper treatment for persons who are in their custody. *Allen v. Rockford*, 349 F.3d 1015, 1020 (7 Cir. 2003) (summary judgment proper where police allowed licensed physician to exercise his judgment, and did not interfere, with respect to proper treatment of woman in their custody). *See also*, *Brownell v. Figel, et al.*, 950 F.2d 1285, 1291 (7 Cir. 1991) ("it would be unrealistic to expect a layman -- in all but extreme cases - to question whether a doctor had employed proper procedures in examining an accident victim"). The Plaintiff claims that on July 4, 2003, Sergeant Frizzell called Cation and inquired about the Plaintiff's medical needs. Amended Complaint, ¶¶15 and 21. Cation does not recall a phone call with Sergeant Frizzell about the Plaintiff. Cation's Answers to the Plaintiff's First Set of Interrogatories ( [71], Exhibit 4) Response to Interrogatory Nos. 1-3. It is his practice, however,

when contacted by security staff about an inmate, to pull the inmate's file and determine whether the issue has been or is being addressed. Cation's Response to Interrogatory No. 3. Whether Sergeant Frizzell spoke to Cation on July 4, 2003 is immaterial, because, by that date the Plaintiff's issue had already been addressed by Brady, who gave the Plaintiff Tylenol. Defendants Brady and Brown's Response to the Plaintiff's Interrogatories, attached hereto as Exhibit 2, at pages 4-5. A failure of proof concerning an essential element of the nonparty's case renders all other facts immaterial. *JPM v. John Deere Industrial Equipment*, 94 F.3d 270, 273 (7 Cir. 1996) (a fact is material for purposes of the summary judgment only if it might effect the outcome of a case under governing law). The Plaintiff did not ask to go on sick call, and Cation, a CMT, could not give the Plaintiff the requested Motrin, because it had not been prescribed. Amended Complaint, ¶7; Plaintiff's Dep. at 127, lns 10-14; 106, ln 24, to 107, ln 5. With respect to Lieutenant Shaw, the Plaintiff's argument appears to be that Lieutenant Shaw was informed by the Plaintiff of his medical issue on July 4, and July 16, 2003. Lieutenant Shaw disputes that this occurred. Shaw's Answers to the Plaintiff's First Set of Interrogatories (a copy of which are attached hereto as Exhibit 5) Response to Interrogatory Nos. 8-11. While disputed, these facts are not material, because Lieutenant Shaw could not give the Plaintiff Motrin either. Furthermore, as noted above, the Plaintiff had already been given Tylenol by Brady, and the Plaintiff was not prescribed Motrin until July 16, 2003.

**RETALIATION**

Generally, a claim of retaliation by prison officials can properly be brought pursuant to Section 1983. *See, e.g., Babcock v. White*, 102 F.3d 267, 276 (7 Cir. 1996)(retaliation th against constitutionally protected conduct is actionable). A prison official may not retaliate against a prisoner because that prisoner filed a grievance, even if the adverse action does not independently violate the constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7 Cir. th 2000). *[A] plaintiff alleging First Amendment retaliation must prove by a preponderance of the evidence that his or her protected activity was a motivating factor in the defendant's retaliatory action*. To clarify, a motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions. As said in *Klunk v. County of St. Joseph,* "[i]f the speech addresses a matter of public concern, the employee must show that the protected speech caused, or at least played a substantial part in, the employer's decision" to take adverse employment action against the plaintiff. Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant, as mandated by *Mt. Healthy* to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct. *Spiegla v. Hull*, 371 F.3d 928, 942-943 (7th Cir. 2004) (citations omitted) (emphasis added). The Plaintiff's retaliation claim is difficult to follow. Nonetheless, it appears the Plaintiff is arguing that the discipline and security measures taken after he flooded his cell (an act that he admits committing) were in retaliation for that act. The Plaintiff's act of flooding his cell is not protected speech, however. First Amendment rights are not absolute. See also, *Hale v. Scott*, 371 F.3d 917, 919, (7th Cir. 2004) (if inmates have some First Amendment rights, they have only those rights that are consistent with prison discipline). Thus, the Plaintiff's claim of retaliation against Lieutenant Shaw fails as a matter of law.

**Based on the foregoing, it is ordered:**

6

1. **The defendants, Cation and Shaw are entitled to summary judgment pursuant to Fed. R. Civ. Pro. Rule 56.  Pursuant to Fed. R. Civ. Pro Rule 56, the defendants' motion for summary judgment [146] is allowed.  The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56.  The case is terminated in its entirety.  The parties are to bear their own costs.**
2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  See Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**Enter this 13th day of March 2007.**

/s/ Harold A. Baker
_____
**Harold A. Baker
United States District Court**